**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| Q.G. by and through his Parents, James G. and Marlina S., ) ) ) ) Plaintiffs, ) ) v. ) ) BRANDYWINE SCHOOL DISTRICT, ) ) Defendant. ) ) | C.A. No. 23-905-JLH |

**MEMORANDUM OPINION**

Caitlin Elizabeth McAndrews, MCANDREWS, MEHALICK, CONNOLLY, HULSE AND RYAN, P.C., Wilmington, Delaware.  D. Daniel Woody, MCANDREWS, MEHALICK, CONNOLLY, HULSE AND RYAN, P.C., Berwyn, Pennsylvania.

    *Counsel for Plaintiffs*

Jennifer Marie Kinkus and Michael P. Stafford, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware.

    *Counsel for Defendant*

February 14, 2025
Wilmington, Delaware

*[signature]*

**JENNIFER L. HALL, U.S. DISTRICT JUDGE**

Plaintiffs Q.G. and his parents ("Parents") appeal to this Court from the Delaware Department of Education Special Education Due Process Hearing Panel's ("Hearing Panel's") denial of tuition reimbursement, an equitable remedy under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.* Plaintiffs also contend that Defendant Brandywine School District (the "District") violated Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990 (ADA), and Delaware law. (D.I. 1.) Pending before the Court are the parties' cross-motions for judgment on the administrative record. (D.I. 16, 20.) Having reviewed the administrative record, the Hearing Panel's decision, and the parties' briefs, and having considered the applicable law, Plaintiffs' Motion (D.I. 16) is DENIED and Defendant's Motion (D.I. 20) is GRANTED.

**I.     BACKGROUND**

When this case was filed, Q.G. attended The Pilot School in Wilmington, Delaware. (AR272–73, AR967.[1]) The Pilot School is a private school that provides specialized education for students who have learning differences. (AR285, AR689–90, AR967.) During the 2019–20 and 2020–21 school years (Q.G.'s kindergarten and first grade years), Q.G. attended Lombardy Elementary School in the District. (AR272–73, AR957.) In July 2021, Q.G. was medically diagnosed with dyslexia. (*Id.*) In August 2021, a District Individualized Education Program (IEP) team determined that Q.G. met the eligibility criteria to receive special education services under the IDEA with a disability classification of "Specific Learning Disability in Basic Reading and Written Expression." (AR272–73, AR958.)

---

[1] Citations to "AR" refer to the Sealed Administrative Record set forth at D.I. 12.

Parents withdrew Q.G. from Lombardy and enrolled him in The Pilot School, a private school, for the 2021–2022 school year (Q.G.'s second grade year). (AR285–86, AR272–73, AR957.) That spring, Parents consented to the District performing a triennial evaluation to determine whether Q.G. continued to qualify for special education services and to develop an IEP for him should he return to the district. (AR59–66, AR307–08.) Q.G. had a full psychoeducational evaluation over two sessions in June 2022 and July 2022, which was memorialized in a 13-page written report. (AR68–80, AR272–73, AR959.) The report noted that Q.G.'s reading skills were in the "low" range, his decoding skills were in the "well below average" range, and his written language skills were in the "very low" range. (AR74, AR79, AR961.) The report noted that Parents reported at-risk concerns for hyperactivity, depression, behavior symptoms, and activities of daily living, but the report further noted that these were not clinically significant concerns and that Q.G. was functioning similarly to his same age peers. (AR76–79.) The report also made various recommendations regarding Q.G.'s education. (AR80, AR962–63.) The recommendations included, among other things, giving Q.G. reading materials at the independent and instructional levels, reducing the length of reading and writing assignments, utilizing peer reading and audio recordings, and teaching Q.G. to slow down when reading and think more when writing. (*Id.*)

In July 2022, a District IEP team determined that Q.G. continued to meet the eligibility criteria to receive special education services under the IDEA under the disability classification of Specific Learning Disability in Basic Reading and Written Expression. (AR272–73, AR958.) The District IEP team prepared a proposed IEP for the 2022–23 school year. (AR115–30, AR961.) On July 25, 2022, the parties had an IEP meeting to review the proposed IEP. (AR272–73, AR960.) The proposed IEP placed Q.G. in an "A" or "Regular Setting" at Lombardy Elementary

School where Q.G. would receive at least 80% of instruction inside the regular classroom along with "pull-out related services and team classrooms." (AR128, AR964.) The IEP contained several goals and accommodations related to Q.G.'s difficulties with reading comprehension and written expression. (AR120–23, AR962–63.) Among other things, the IEP required specialized instruction for reading totaling 40 minutes a day, four times per week, and specialized instruction for writing totaling 15 minutes a day, three times a week. (AR120–23, AR972.) The proposed IEP did not include specific goals for social-emotional and executive functioning skills, but it did include "Accommodations, Modifications & Support" (AMS) for "Self-Monitoring and Regulation." (AR125, AR972.)

Months before the July 25, 2022 IEP meeting, Parents had signed The Pilot School Enrollment Contract for the 2022–23 school year and paid a $1,000 deposit for Q.G.'s tuition. (AR967.) Pursuant to the enrollment contract, Parents became obligated for the full year of tuition on July 31, 2022 (approximately a week after the IEP meeting). (AR245–48, AR967.) Two weeks after that, on August 15, 2022, Parents emailed Defendant, stating, "Since we unfortunately do not believe that the 7/25/22 IEP and placement offered for the upcoming school year will meet [Q.G.]'s educational needs, we must reject the IEP." (AR145.) The email further stated, "Due to our concerns, we have no other option but to enroll [Q.G.] at the Pilot School for the 2022–23 school year, and we ask that the school district fund the tuition." (AR145, AR958.) The email did not set forth any specific concerns with the IEP.

In response, the District scheduled a second IEP meeting for August 22, 2022. (AR145–46, AR958.) The second meeting involved the same IEP that was proposed during the July 25, 2022 meeting. (AR913, D.I. 17 at 7–8, D.I. 21 at 17–18.) The parties again discussed the proposed IEP but neither party proposed any changes, and no changes were made. Believing that the

proposed IEP was sufficient to address Q.G.'s needs, the District denied Parents' request for tuition reimbursement. (AR156–57.) Parents wrote back that they "must reject" the IEP, and they kept Q.G. enrolled at The Pilot School for the 2022–23 school year. (AR158, AR967.)

On March 7, 2023, Plaintiffs filed a due process complaint against Defendant with the Delaware Department of Education (DDOE). (AR14–19, AR955.) Plaintiffs alleged that Defendant violated the IDEA because it failed to present Q.G. with an offer of a free appropriate public education (FAPE) and denied Plaintiffs' request for tuition reimbursement. (*Id.*) The DDOE appointed three panel members—an "Attorney Chairperson," an "Educator," and a "Layperson"—and scheduled a Special Education Due Process Hearing for April 20–21, 2023. (AR3–12, AR30–32.) Neither party objected to the appointment of any hearing panel member. (AR30.) Prior to the hearing, the parties were advised of their rights regarding the hearing (AR30–32), submitted a joint stipulation of facts (AR272–76, AR956), submitted a joint exhibit list (AR43–46, AR956), and exchanged witness lists (AR30–32, AR270–71). At the hearing, both parties had an opportunity to present their case through opening statements, direct examination of witnesses, and cross-examination of witnesses. (*See generally* 277–858 (transcripts of hearing).) Following the hearing, both parties submitted written closing statements. (AR889–914 (Plaintiffs' statement), AR915–54 (Defendant's statement), AR956.)

After the hearing, Plaintiffs filed a "Motion for Recusal of Panel Member, or in the Alternative, a Motion for a New Hearing." (AR859–62, AR956.) Plaintiffs argued that the "Educator" panel member should be recused because (1) she interrupted the cross-examination of a witness offered by Defendant to ask questions and make comments regarding certain documents from The Pilot School (AR859–62; *see* AR677–82), and (2) after the hearing, she sent an *ex parte* email to the District's attorneys attempting to explain her comments during the hearing (AR859–

5

62; *see* AR863). (The District's attorneys forwarded the email to Plaintiffs' counsel that same day. (*See* AR863.)) On May 3, 2023, the Hearing Panel Chairperson granted Plaintiffs' motion for recusal on the basis that a reasonable observer might find an appearance of bias due to the panel member's *ex parte* communication. (AR885–88, AR956.)

On May 19, 2023, the Hearing Panel issued a 20-page written decision concluding that Plaintiffs were not eligible for tuition reimbursement because Defendant provided an appropriate IEP that was an offer of a FAPE. (AR955–74.) The Hearing Panel found that the proposed IEP was drafted with appropriate elements and goals in mind given the weaknesses identified in Q.G.'s psychoeducational assessment. (AR970.) The Hearing Panel noted that each of the elements within the proposed IEP were tailored to specific goals, contained a measure of performance, and had benchmarks to measure progress. (*Id.*) Rejecting Plaintiffs' arguments that the proposed IEP contained basic and generic goals and was academically inappropriate, the Hearing Panel found that the proposed IEP met all of the requirements laid out in 34 C.F.R. § 300.320 and 14 Del. Admin. C. § 925.7.0 and noted that Plaintiffs did not present any witnesses to rebut the presumption that the offered reading program for the proposed IEP's reading goals would be academically appropriate. (AR970–71.) Further, the Hearing Panel found that, although the proposed IEP did not include self-monitoring and regulation as a "formal element," the psychoeducational evaluation data did not require it, and there was an "extensive list of accommodations, modifications and supports to assist Student's well-being" under the category of "Self-Monitoring and Regulation." (AR962, AR964, AR972.)

On August 17, 2023, Plaintiffs filed their Complaint in this Court. (D.I. 1.) The case was reassigned to me on January 23, 2024.

## II.     LEGAL STANDARDS

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, establishes a substantive right for children with disabilities to receive a "free appropriate public education" (FAPE). *See generally Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 390–92 (2017). Parents may unilaterally place their child at a private school but are eligible for reimbursement from the school district if, and only if, the school district has not offered the student a FAPE. *J. F. v. Byram Twp. Bd. of Educ.*, 812 F. App'x 79 (3d Cir. 2020). The IEP is the cornerstone of a FAPE. To meet its obligations under the IDEA, a school must "offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399.

When parents challenge a school's provision of a FAPE to a child, a reviewing court must (1) consider whether the school district complied with IDEA's procedural requirements and (2) determine whether the educational program (IEP) was "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07 (1982).

Procedural violations of the IDEA, while certainly undesirable, are only actionable if the violation caused some substantive harm, such as loss of educational opportunity or benefits for the student or a serious deprivation of the parents' participation rights. *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007) (citing 20 U.S.C. § 1415(f)(3)(E)).

"The issue of whether an IEP is appropriate is a question of fact." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) (citing *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995)). When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as "modified de novo" review. Under this standard, a district court must give "due

7

weight" and deference to the findings in the administrative proceedings. *Rowley*, 458 U.S. at 206. "Factual findings from the administrative proceedings are to be considered prima facie correct," and if the reviewing court does not adhere to those findings, it is "obliged to explain why." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (quoting *S.H. v. State–Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). Moreover, "a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" *Id*. (quoting *Carlisle Area Sch.*, 62 F.3d at 529). "Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F.*, 580 U.S. at 399.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, similarly establishes a substantive right for children with disabilities to receive a FAPE. *See generally D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253 n.8 (3d Cir. 2012) (explaining how Section 504 is similar to the IDEA).

The ADA "extends the nondiscrimination rule of [Section 504] to services provided by any public entity (without regard to whether the entity is a recipient of federal funds)." *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996); 42 U.S.C. § 12132. The "[f]ailure to provide a FAPE . . . generally violates the ADA . . . because it deprives disabled students of a benefit that non-disabled students receive simply by attending school in the normal course—a free, appropriate public education." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013).

## II. DISCUSSION

### A. IDEA claim

Plaintiffs contend that (1) they were deprived of a fair, impartial, and independent hearing in violation of IDEA and (2) that they are entitled to tuition reimbursement because Q.G. was not offered a FAPE. Regarding the first argument, Plaintiffs do not point to a specific procedural requirement in the IDEA that they think was violated. Plaintiffs point to the IDEA requirement for an "impartial due process hearing," 20 U.S.C. § 1415(f), but there is nothing in the record before the Court that would suggest any partiality by the Hearing Panel members who rendered the decision, particularly since the Hearing Panel Chairperson granted Plaintiffs' request for recusal of the Educator panel member.[2]

The Court next turns to Plaintiffs' contention that they are entitled to a tuition reimbursement because the District did not offer a FAPE.[3] Plaintiffs argue that the proposed IEP was not "reasonably calculated to enable [Q.G.] to make progress appropriate in light of [Q.G.'s] circumstances," *Endrew F.*, 580 U.S. at 399, because it "failed to offer social, emotional, behavioral, and executive functioning needs at all and failed to offer a special education reading program." (D.I. 17 at 21.)

Contrary to Plaintiffs' assertion that the proposed IEP didn't address social/emotional and executive functioning needs "at all," the proposed IEP includes a list of "Self-Monitoring and

---

[2] Indeed, Defendant points out, and Plaintiffs do not dispute, that the Educator panel member's comments during and after the hearing concerned speech language therapy and occupational therapy, neither of which were needed by Q.G. (D.I. 21 at 15–16, 18 n.6.)

[3] The parties agree that, to prevail on a claim for tuition reimbursement, Plaintiffs must show both that the proposed IEP did not offer a FAPE and that placement at the private school was proper. (D.I. 17 at 19–20; D.I. 21 at 19.) *See also Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985).

Regulation" and "Accommodations, Modifications & Support" (AMS)[4]—even though the Hearing Panel found that the data did not necessarily require it. (AR125, AR962, AR406–09, AR972.) What's more, many of the AMS included in the other IEP goals were geared towards Q.G.'s executive functioning and social, emotional, and behavioral needs. (*See, e.g.*, AR120 ("Phonics/Decoding" AMS includes "larger assignments broken into manageable chunks"), AR80.) Plaintiffs complain that the IEP "did not offer a programming or supports in a Social Emotional Learning (SEL) class; participation in a co-taught class (a classroom with both a special education and general education teacher); or related services such as counseling." (D.I. 17 at 25.) However, the IEP proposed placing Q.C. in the "A" setting, which includes a co-taught classroom. (AR128, AR359–60, AR411–13, AR447–49, AR964.) And even if Plaintiffs had asked the

---

[4] The IEP proposed for Q.G. lists the following AMS under "Self-Monitoring and Regulation":
- breaks during longer academic sessions - gross motor when applicable
- close proximity to the teacher during longer academic periods
- flexible seating options
- seating away from peer and classroom distractions
- availability of headphones
- provide prompting for focus strategies (such as timers, checklists, movement, segmenting work)
- ensure a structured and routine classroom environment
- break longer assignments into smaller chunks
- provide individual directions prior to independent work time to support understanding and increase confidence
- incorporate task checklists as part of his self-monitoring
- use of calming strategies (fidgets, breathing techniques, taking a break away from others)
- provide frequent and consistent check-ins with [Q.G.] to help him accurately self-assess
- provide [Q.G.] with a daily schedule
- when the daily schedule changes, provide a warning ahead of time by explaining the change verbally and referencing the schedule
- ensure [Q.G.] understands what is required to complete the assignment
- redirection and refocusing as needed
- acknowledge [Q.G.] when h[is] hand is raised for reinforcement

(AR125.)

District to modify the IEP to include any of the things they now complain about—and the record reflects that they did not—an IEP "does not have to provide 'the optimal level of services,' or incorporate every program requested by the child's parents." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012) (internal citations omitted).  Rather, the question with respect to an IEP is "whether [it] is reasonable, not whether the court regards it as ideal." *K.D. v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 255 (3d Cir. 2018) (quoting *Endrew F.*, 580 U.S. at 399).  The IEP offered to Plaintiffs was reasonable.

Turning to Plaintiffs' challenge to the IEP's reading program, their primary complaint is that the IEP uses the "Road to Reading" program, which Plaintiffs believe is inappropriate to address Q.G.'s needs in view of his dyslexia diagnosis.  The Hearing Panel assessed the testimony and other evidence of record and concluded that using the Road to Reading program, combined with the specific goals and AMS in the IEP, and placing Q.G. in the "A" setting, would allow him to make meaningful progress in reading, notwithstanding his dyslexia diagnosis. (AR969–72; *see also* AR359–61, AR387–412, AR447–49, AR469–74.)  On this record, the Court agrees.  Contrary to Plaintiffs' assertion that the IEP goals are "basic and generic," the proposed IEP takes into account Q.G.'s particular limitations and was drafted with appropriate elements and goals for Q.G. to make meaningful educational progress.  (AR74, AR120–23, AR970.)

The Court keeps in mind the Supreme Court's directive that the question is not whether the proposed IEP is ideal but whether the proposed IEP is reasonable, *see Endrew F.*, 580 U.S. at 399, as well as the IDEA's requirement that students be educated in a regular classroom setting to the maximum extent appropriate, *see* 20 U.S.C. § 1412(a)(5).  And the Court recognizes that Plaintiffs understandably want the best educational opportunities for Q.G.  But the law only entitles Plaintiffs to what is reasonably calculated to enable progress that is appropriate in light of Q.G.'s

11

circumstances, and the proposed IEP met that requirement. The Court will grant summary judgment to Defendant on Plaintiffs' IDEA claim for tuition reimbursement.

### B.     Remaining claims

Plaintiffs do not dispute that their remaining claims rise and fall with the IDEA claim. (D.I. 1 ¶¶ 7–8, 38–47; *see also* D.I. 21 at 24.) *See, e.g., C.G. v. Brandywine Sch. Dist.*, No. 22-152, 2023 WL 2587808, at *7–*8 (D. Del. Mar. 21, 2023) (dismissing Section 504 and ADA claims because the school district provided the student with an IEP that was an offer of FAPE). As the Court has determined that Q.G. was offered a FAPE, the Court will grant summary judgment to Defendant on the Section 504 and ADA claims.

### III.    CONCLUSION

The Court has considered the parties' remaining arguments and finds that they do not warrant extended discussion. For the reasons discussed above, Plaintiffs' motion for judgment on the administrative record (D.I. 16) is DENIED and Defendant's cross-motion (D.I. 20) is GRANTED.

The Court will issue an Order and a Judgment consistent with this Memorandum.